FILED
02 DEC -6 PM 3: 19
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| WAYNE'S PEST CONTROL, INC.; ANTHONY C. HARLOW and MELISSA HARLOW, | ) ) ) ) |
| Defendants. | ) ) |
| _____ | ) ) ) |
| WAYNE'S PEST CONTROL, INC., | ) ) |
| Counterclaim Plaintiff, | ) ) ) |
| vs. | ) ) |
| WESTPORT INSURANCE CORPORATION, | ) ) ) |
| Counterclaim Defendant. | ) |

Civil Action Number
01-C-1380-S

ENTERED
DEC 0  2002

**MEMORANDUM OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This declaratory judgment action is before the Court on the parties' cross-motions for summary judgment. The central issue raised by those motions is whether Westport Insurance Corporation ("Westport") is obligated under a contract of insurance to defend Wayne's Pest Control, Inc. ("Wayne's") in a putative class action brought against Wayne's in an Alabama state

court by Anthony and Melissa Harlow (the "Harlows"). Westport additionally seeks summary judgment on a counterclaim brought against it by Wayne's claiming "anticipatory breach of contract." Upon consideration of the record and the arguments of counsel, the court concludes that Westport's motion for summary judgment is due to be granted and that Wayne's cross-motion is due to be denied.

## I. BACKGROUND

A.  The Underlying State-Court Lawsuit

On July 27, 2000, the Harlows filed a putative class action complaint against Wayne's in the Bessemer Division of the Circuit Court of Jefferson County, Alabama, styled *Anthony C. Harlow and Melissa Harlow v. Wayne's Pest Control, Inc.*, Civil Action Number CV00-805. *See* Exhibit B to Wayne's Motion for Summary Judgment (hereinafter the "Harlow Complaint"). Therein, the Harlows allege that they entered into a termite warranty contract with Wayne's on March 18, 1993 (hereinafter the "Termite Contract"). Harlow Complaint ¶ 5. The Harlows assert that the Termite Contract gave them a unilateral right of renewal upon the payment of an annual fee. *Id.* However, they maintain that on or about June 22, 2000 Wayne's advised them that it was exercising an option not to renew the Termite Contract because the Harlows' home was clad with synthetic stucco siding. *Id.* ¶ 7. In count one of their complaint, the Harlows claim that Wayne's is liable for breach of contract, *see id.* ¶¶ 18-21, for which they seek to recover compensatory damages "in an amount equal to the difference between what Wayne's was charging prior to the purported termination or non-renewal for the termite warranty and the sums paid . . . to secure similar warranty protection with other pest control services . . . ." *Id.* ¶ 21. In

Count Two, the Harlows claim that Wayne's is liable in tort for breach of the implied duty of good faith and fair dealing. *See id.* ¶¶ 22-27. As a result of Wayne's alleged bad faith non-renewal of the Termite Contract, the Harlows state that they have suffered "financial loss" and "mental distress and worry." *Id.* ¶ 22.

On April 16, 2001, the Harlows filed an amended complaint in the state court, adding Wayne's Pest Control Company L.L.C. ("Wayne's L.L.C.") as a party and adding two more counts. *See* Exhibit C to Wayne's Motion for Summary Judgment (hereinafter the "Harlow Amended Complaint"). One of these, count three, alleges that Wayne's formed Wayne's L.L.C. and fraudulently conveyed assets to it in order to avoid liabilities, and the Harlows argue that Wayne's L.L.C. is liable on any judgment they might secure against Wayne's. *See* Harlow Amended Complaint ¶ 29-33. In count four, the Harlows allege that Wayne's misrepresented and suppressed certain facts. *See id.* ¶¶ 35-39. First, they assert that they and other putative class members relied upon misrepresentations that Wayne's "mistakenly or recklessly" made to them, to the effect that if they paid an annual renewal fee, their respective termite contracts would be renewed. *Id.* ¶¶ 35, 38. The Harlows also assert that Wayne's suppressed from them and the class "that they intended to try and cancel the contracts of those customers with Dryvit material incorporated into their homes." *Id.* ¶ 35. The Harlows characterize Wayne's misrepresentations as constituting "negligent or wanton non-renewal or cancellation of the contracts," *id.* ¶ 38, and that, by virtue of both its misrepresentations and suppression, Wayne's "committed a fraud on the market of pest control contract customers." *Id.* ¶ 37. Based upon these allegations in count four, the Harlows contend that they "have suffered mental anguish and inconvenience." *Id.* ¶ 39.

The Harlows bring all of their claims not only as individuals, but also in a capacity of

would-be representatives of a class of similarly situated persons who timely paid all annual renewal charges but whose termite warranty contracts Wayne's non-renewed because of some reason other than the failure to pay the renewal fee. *See* Harlow Complaint ¶¶ 8-17; Harlow Amended Complaint ¶¶ 34-36, 39.  However, the state court has not, as of yet, certified any of the Harlows' claims for class treatment pursuant to Alabama Rule of Civil Procedure 23.

      B.      The Westport Insurance Policy

Prior to the Harlows' filing the underlying suit against Wayne's in state court (hereinafter the "underlying suit"), Westport had issued a policy of Commercial General Liability Insurance to Wayne's, with the policy number EC2031246. *See* Exhibit A to Wayne's Motion for Summary Judgment (doc. no. 22); Exhibit B to Westport's Motion for Summary Judgment (doc. no. 24) (hereinafter the "Policy").  Under the Policy, Westport agreed to provide liability insurance to Wayne's for covered damages, including the duty to defend, in the event of covered lawsuits, claims, or losses, with coverage being provided for the period of January 2, 1999 to January 2, 2000. The Policy provides, in pertinent part, as follows:

      **SECTION I - COVERAGES**

      **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

      **1. Insuring Agreement.**

      **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defendant the insured against any

'suit' seeking those damages. However, we will have not duty to defend the insured against any 'suit' seeking those damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result. . . .

b.  This insurance applies to 'bodily injury' and 'property damage' only if:

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' . . ., and

(2) The 'bodily injury' or 'property damage' occurs during the policy period.

. . . .

**2. Exclusions.**

This insurance does not apply to:

a.  **Expected or intended injury**

'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. . . .

. . . .

**SECTION V - DEFINITIONS**

. . . .

3.  'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . . .

12. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful condition.

. . . .

>   **15.** 'Property damage' means:
>
>   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
>   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur a the time of the 'occurrence' that caused it.

Exhibit A to Wayne's Motion for Summary Judgment; Exhibit B to Westport's Motion for Summary Judgment.

>   C.   The Instant Action

Thus far, Westport has funded Wayne's defense in the underlying suit. However, Westport has advised Wayne's that it intends to withdraw from doing so, based upon Westport's assertion that the Policy does not provides coverage for any of the claims in the underlying suit. On May 1, 2001, Westport filed the instant action against Wayne's and the Harlows. (Doc. no. 1). Invoking this court's diversity jurisdiction, *see* 28 U.S.C. § 1332, Westport seeks a declaratory judgment, pursuant to Alabama Code, § 6-5-5 *et seq.* and 28 U.S.C. § 2201 *et seq.*, that it is not obligated to defend or indemnify Wayne's because none of the claims in the underlying suit are covered under the Policy. On February 28, 2002, Wayne's filed a counterclaim against Westport seeking a declaratory judgment holding that the Policy requires Westport to defend Wayne's against some or all of the claims in the underlying suit. (Doc. no. 14).[1] Westport and Wayne's have filed cross-motions for summary judgment, asking the court to

---

[1] Wayne's also alleged in its counterclaim that Westport is liable to pay compensatory damages for "anticipatory breach of contract." However, Wayne's has expressly admitted that Westport's motion for summary judgment on this claim is due to be granted. *See* Wayne's

interpret the Policy and determine whether Westport must defend Wayne's.[2] The court heard oral arguments on said motions on October 4, 2002.

## II. SUMMARY JUDGMENT STANDARDS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a plaintiff or a defendant may move "with or without supporting affidavits" for summary judgment in its favor on "a claim" or "any part thereof." Fed. R. Civ. P. 56(a) and (b). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, at 323. *See also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its to initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a

---

Memorandum in Opposition to Westport's Motion for Summary Judgment at 9. Accordingly, that claim is due to be dismissed with prejudice.

[2]The Harlows have adopted the arguments set forth in Wayne's brief in opposition to Westport's motion for summary judgment.

district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.*, 50 F.3d 1579, 1581 (11th Cir. 1995)). "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.' " *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p.299).

## III. DISCUSSION

A.  The Applicable Law

The parties agree that, as a diversity case, Alabama law governs resolution of all substantive issues. *See American & Foreign Ins. Co. v. Colonial Mortg. Co., Inc.*, 936 F.2d 1162, 1165 & n.7 (11th Cir. 1991) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *Parker Supply Co., Inc. v. Travelers Indem. Co.*, 588 F.2d 180, 182 (5th Cir. 1979);[3] *American Economy Ins. Co. v. Fort Deposit Bank*, 890 F. Supp. 1011, 1016 n.7 (M.D. Ala. 1995). Thus, the court is bound to resolve the legal issues in the same way the Alabama Supreme Court would predictably resolve the issues. *See Royal Ins. Co. of America v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir. 2001). "Where no state court has decided [an] issue a federal court must 'make an educated guess as to how that state's supreme

---

[3] All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

court would rule.'" *Nobs Chemical, U.S.A., Inc. v. Koppers Co., Inc.*, 616 F.2d 212, 214-15 (5th Cir. 1980) (quoting *Benante v. Allstate Ins. Co.*, 477 F.2d 553, 554 (5th Cir. 1973); *Smoot v. State Farm Mut. Auto. Ins. Co.*, 299 F.2d 525, 529 (5th Cir. 1962)) (bracketed material added).

Under Alabama law, an insurer's duty to defend its insured is determined primarily by the language of the policy and by the allegations in the complaint about what gave rise to the cause of action against the insured. *American States Ins. Co. v. Martin*, 662 So. 2d 245, 247 (Ala. 1995). "If the allegations of the injured party's complaint show an accident or occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Acceptance Ins. Co. v. Brown*, ___ So. 2d. ___, ___, 2001 WL 729283, *8 (Ala. 2001) (citing *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So.2d 100, 102 (Ala.1977)). If a complaint that did not allege acts covered by an insurance policy is amended to add allegations of actions that are covered under the policy, the insurer's duty to defend is then activated. *Blackburn v. Fidelity and Deposit Co. of Maryland*, 667 So. 2d 661, 670 (Ala. 1995) (citing *Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570, 574 (Ala. 1988)). Also, if a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to defend at least the allegations covered by the policy. *Id.*

"Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, *Colonial Life & Accident Ins. Co. v. Collins*, 280 Ala. 373, 194 So. 2d 532, 535 (Ala. 1967), while the insurer bears the burden of proving the applicability of any policy exclusion. *United States Fidelity & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985)." *Allstate Indem. Co. v. Lewis*, 985 F. Supp. 2d 1341, 1345 (M.D. Ala. 1997). The terms of an insurance policy are construed liberally in favor of the insured and

strictly against an insurer who drafted and issued the policy, with exclusions construed as narrowly as possible so as to provide maximum coverage for the insured. *Graham v. Preferred Abstainers Ins. Co.*, 689 So. 2d 188, 190 (Ala. Civ. App. 1997); *Perkins v. Hartford Ins. Group*, 932 F.2d 1392, 1395 (11th Cir. 1991). However, when an insurance contract is unambiguous, it must be enforced as written, and the court has a duty to interpret its meaning, which may be done on summary judgment. *See Ross Neely Systems, Inc. v. Occidental Fire & Cas. Co. of North Carolina*, 196 F.3d 1347, 1350 (11th Cir. 1999); *Steward v. Champion Intern. Corp.*, 987 F.2d 732, 734 (11th Cir. 1993) (both applying Alabama law). Thus, the court may not favor an insured contrary to the policy's clear meaning. *Ross Neely Systems, Inc., supra* (citing *Wakefield v. State Farm Mut. Auto. Ins. Co.*, 572 So. 2d 1220, 1222 (Ala. 1990); *State Farm Mut. Auto. Ins. Co. v. Lewis*, 514 So. 2d 863, 865 (Ala.1987)). Whether a contract is unambiguous is a question of law for the court to decide, and the fact that the parties adopt conflicting interpretations of the contract in the throes of litigation does not create ambiguity where none exists. *Steward, supra* (citing *Terry Cove North, Inc. v. Baldwin County Sewer Auth., Inc.*, 480 So. 2d 1171, 1173 (Ala.1985); *Hill Air of Gadsden, Inc. v. City of Gadsden*, 467 So.2d 230, 233 (Ala.1985)).

  B. Contentions of the Parties

Westport and Wayne's agree that summary judgment is appropriate because the language of the Policy is unambiguous, although they each interpret it to support their respective positions. Westport and Wayne's also agree that, in order for Westport's duty to defendant to be triggered, it must appear that the Harlows' underlying suit seeks to recover damages for "bodily injury" or "property damage" that has both occurred within the policy period and been caused by an

"occurrence," as those terms are defined in the Policy. With that, the court turns to examine the parties' specific arguments.

    1.    "Occurrence"

Westport first argues that even assuming that the underlying suit seeks to recover for "property damage" or "bodily injury," such harm is not alleged to have been caused by an "occurrence," as that term is defined by the Policy: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Westport contends that any injuries alleged by the Harlows result from Wayne's' decisions to "non-renew" its customers' termite contracts. Because such decisions were, Westport maintains, deliberate and intentional, they may not be construed as "accidents," and thus are not "occurrences."

Wayne's does not offer any argument disputing Westport's characterization of Wayne's's decisions not to renew the termite contracts of customers as intentional acts. Indeed, Wayne's does not claim that such non-renewal decisions are "occurrences" under the Policy at all. Rather, what Wayne's argues instead is that, although some of the Harlows' claims are founded upon the purportedly wrongful *non-renewal or termination* of the termite contracts, the Harlows have also alleged that Wayne's has caused them harm by negligently or recklessly misrepresenting to the them and other putative class members that their respective termite warranty contracts would be renewed upon the payment of an annual fee. It is these alleged unintentional misrepresentations that Wayne's identifies as "occurrences" under the Policy.

Count Four of the Amended Complaint clearly includes allegations that Wayne's is liable for harm caused as a result of negligently or recklessly misrepresenting to the Harlows and other class members that their termite warranty contracts would be renewed each year upon the

payment of an annual fee. *See* Harlow Amended Complaint ¶¶ 35-39. The Alabama Supreme Court has held that averments that the insured caused plaintiffs in an underlying lawsuit to suffer harm by negligently or recklessly making a misrepresentation are sufficient to constitute an alleged "occurrence" for purposes of triggering the insurer's duty to defend the insured against such claims. *See Fowler Pest Control v. Hartford Ins. Co.*, 512 So. 2d 88, 89-90 (Ala. 1987) (to the extent that the underlying action alleged that the insured had unintentionally misrepresented to the plaintiff that no termite damage was observed upon the property they purchased, the insurer had a duty to defend); *American States Ins. Co. v. Cooper*, 518 So. 2d 708, 709-10 (Ala. 1987) (allegations that the insured recklessly or innocently misrepresented the number of pre-leased units in apartment complexes, inducing the plaintiffs in the underlying action to purchase the complexes, resulting in economic losses and mental anguish, obligated the insurer to defend); *Universal Underwriters Ins. Co. v. Youngblood*, 549 So.2d 76, 78-79 (Ala. 1989) (the insureds' alleged innocent or reckless misrepresentations that the plaintiffs in the underlying action were being paid in accordance with the compensation schedule described in their employment contracts, causing economic loss and mental suffering, presented a sufficient basis to support a duty to defend). Such principles have also been applied by Judge DeMent in a published decision from the Middle District of Alabama, in which the court held that the insurer had a duty to defend. *See American Economy Ins. Co. v. Fort Deposit Bank*, 890 F. Supp. 1011, 1017 (M.D. Ala. 1995) (following *Cooper* to hold that a complaint against the insured bank, claiming that the plaintiff suffered mental anguish as result of bank's innocent, negligent, or reckless misrepresentation of certain facts regarding terms of loan and credit life insurance, alleged an "occurrence" as defined in bank's commercial general liability policy).

Westport argues, however, that the Alabama Supreme Court cases cited above are not controlling because the definition of "occurrence" in the policies at issue is different from the definition of that term in the Policy. Specifically, Westport points out that "occurrence" is defined in the Policy simply as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." By contrast, Westport emphasizes, in both *Cooper* and *Fowler* the term was defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damages neither expected nor intended from the standpoint of the insured," 512 So. 2d at 90; 518 So. 2d at 710, and similarly in *Youngblood*: "'OCCURRENCE' means an accident, including continuous or repeated exposure to conditions, which results in INJURY during the Coverage Part period neither intended nor expected by the INSURED." 549 So. 2d at 78. Westport acknowledges *Fowler*, *Cooper*, and *Youngblood* but asserts that they are all distinguishable from the instant case on the basis that the definition of "occurrence" in each of the policies under consideration in the Alabama Supreme Court cases included the additional language requiring the injuries in the underlying suit to have been neither expected nor intended by the insured, while no such language is present in the definition of "occurrence" in the Policy here. Westport further surmises that had the policies in *Fowler*, *Cooper*, and *Youngblood* defined "occurrence" without the language concerning expected or intended injuries, they would have been decided differently.

The Court is unconvinced by Westport's argument. As here, the policies at issue in *Fowler*, *Cooper*, and *Youngblood* all define "occurrence" as an "accident." While the definition of "occurrence" in those three Alabama cases also included additional language requiring the

injuries in question to be "neither expected nor intended" by the insured, which is not present here, the Alabama Supreme Court has characterized such additional language to create a definition of "occurrence" that is only "slightly different" from the one set forth in the Policy. *United States Fidelity and Guaranty Co. v. Baldwin County Home Builders Ass'n, Inc.*, 770 So. 2d 72, 75 (Ala. 2000). Indeed, the language concerning intended or expected injuries in the definition serves as a "qualifying clause" on what may constitute an "occurrence." *Ladner*, 347 So.2d at 102. Therefore, the definition of "occurrence" in the Policy, because it does not contain the additional qualification, would, if anything, be *broader* than in the policies in *Fowler*, *Cooper*, and *Youngblood*, not narrower, as Westport would imply. Furthermore, the Court notes that the Policy also contains a separate exclusion for injuries that are intended or expected from the standpoint of the insured. Thus, when read in its entirety, the Policy does not differ materially on this aspect of coverage from that of the policies in *Fowler*, *Cooper* or *Youngblood*.

Westport also urges that the Court should be guided by *United States Fidelity & Guaranty Co. v. Omnibank*, 812 So. 2d 196 (Miss. 2002), in which the Mississippi Supreme Court interpreted the meaning of "occurrence" in a general liability policy that defined the term using identical language to that found in the Policy. There, the plaintiff in the underlying action had asserted various causes of action against the insured bank alleging intentional or negligent misconduct associated with "force-placing" insurance on the plaintiff's automobile that had been financed through the bank. *Id.* at 197-98. The court held, however, that the insurer had no duty to defend because,"[e]ven if the insured acts in a negligent manner, that action must still be accidental and unintended in order to implicate policy coverage," *id.* at 197, and the court

deemed all of the bank's relevant actions themselves to have been intentional in nature and thus not accidental, even if the bank did not intend the particular damages that resulted from its actions. *Id.* at 201-02.

This Court declines to follow *Omnibank*. Because it is not a decision of the Alabama state courts, *Omnibank* is not binding in this diversity action. *See Alimenta (U.S.A.), Inc. v. Cargill Inc.*, 861 F.2d 650, 653 (11th Cir. 1988). The case may, rather, constitute only persuasive authority of what the Alabama Supreme Court would likely decide if faced with an open legal question presented in the instant case. *See, e.g., Elan Pharmaceutical Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1382 (11th Cir. 1998). However, it appears that Westport's reliance upon *Omnibank* is based entirely upon the fact that the policy there defines "occurrence" in the same terms as the Policy, omitting the language excluding injuries intended or expected by the insured. But as the Court has already explained, the absence of language regarding intended or expected injuries in the definition of "occurrence" affords no cause to depart from the holdings of *Fowler, Cooper,* or *Youngblood*. Furthermore, the *Omnibank* court gave no hint that its decision hinged on the presence or absence of additional qualifying language in the definition of "occurrence" concerning whether the insured expected or intended the injuries alleged in the underlying suit. Regardless of what this Court may think of the reasoning in *Omnibank*, it is unlikely that the Alabama Supreme Court would both adopt it and interpret it to mean that the Harlows' allegations of negligent or reckless misrepresentations are insufficient to constitute an "occurrence" under the Policy, given the holdings in *Fowler, Cooper,* and *Youngblood. Also cf. Alfa Mut. Ins. Co., Inc. v. Morrison*, 613 So. 2d 381, 382 (Ala. 1995) (upholding a judgment requiring the insurer to duty to defend the insured against a claim of

libel; while acknowledging that the insured intentionally published the material in question, the court held that the complaint in the underlying action did not strictly allege an intentional tort because of allegations that the insured's publication was done with "reckless disregard" of the falsity of his statements). Based upon *Fowler*, *Cooper*, *Youngblood*, and Judge DeMent's consonant decision in *Fort Deposit Bank*, *supra*, the Court concludes that the Harlows' allegations in the underlying suit that Wayne's caused them harm by negligently or recklessly misrepresenting that the termite warranty contract would be renewable upon the payment of an annual fee are sufficient to show an alleged "occurrence" within the meaning of the Policy, for purposes of triggering Westport's duty to defend.

2. "Property Damage"

Westport next argues that even assuming if these has been an alleged "occurrence" within the meaning of the Policy, the underlying suit does not allege any form of "property damage" because the Policy limits coverage for such harm to "physical injury to" or "loss of use of" "*tangible* property." (Emphasis added). The only potential "property damage" alleged in the Harlows' original and amended complaints is economic loss associated with being induced to enter into the Termite Contract with Wayne's and subsequently having to secure replacement coverage after Wayne's non-renewed it.[4] However, under Alabama law, purely economic losses do not constitute injury to "tangible property" for purposes of determining whether there has

---

[4]Although not an argument pressed in any of its briefs on the cross-motions for summary judgment, Wayne's suggested at oral argument that there are allegations in the underlying suit that Wayne's wrongful conduct resulted in termite damage to the homes of the Harlows and other putative class members, and that Wayne's is liable to pay damages therefor. However, an examination of the Harlows original and amended complaints does not bear out that there have been such allegations. Thus, the court will not decide whether allegations of such harm might have constituted covered "property damage" under the Policy.

been "property damage" within the meaning of a commercial general liability policy. *American States Ins. Co. v. Martin*, 662 So. 2d 245, 247-49 (Ala. 1995); *State Farm Fire & Cas. Co. v. Middleton*, 65 F. Supp. 2d 1240, 1245 (M.D. Ala. 1999). Thus, the Court concludes that the underlying suit does not contain an allegation of "property damage" under the Policy sufficient to activate Westport's duty to defend.

   3. "Bodily Injury"

  Nonetheless, Wayne's contends that the allegations in the underlying action that the Harlows and other putative class members suffered mental anguish as a result of Wayne's negligent or reckless misrepresentations qualifies as "bodily injury" as defined in the Policy, activating Westport's duty to defend. Westport does not dispute that the underlying suit contains such allegations, nor that under Alabama law mental anguish may qualify as "bodily injury" under the Policy definition, even if unaccompanied by more tangible physical harm. *See, e.g., Alfa Mut. Ins. Co., Inc. v. Morrison*, 613 So. 2d at 382; *Cooper*, 518 So. 2d at 710; *Fort Deposit Bank*, 890 F. Supp. at 1016-17; *Morrison Assurance Co. v. North American Reinsurance*, 588 F. Supp. 1324, 1327 (N.D. Ala. 1984). Westport highlights, though, that the Policy expressly covers only "'bodily injury' . . . that occurs during the policy period," which in this case is January 2, 1999 to January 2, 2000. In that vein, Westport contests whether there has been a sufficient showing that the underlying suit seeks to recover damages for mental anguish that occurred within the policy period.

  Westport points out that the Harlows themselves allege that Wayne's wrote them a letter "on or about June 22, 2000," advising that their termite warranty contract was not going to be renewed. *See* Harlow Complaint ¶ 7. Therefore, Westport asserts, any mental anguish the

Harlows suffered necessarily would have occurred on about that date or thereafter, more than five months after the expiration of the Policy on January 2, 2000. Neither Wayne's nor the Harlows have contested Westport's contention that the Harlows would not have suffered any mental anguish prior to receiving Wayne's letter. Where the language of a general insurance policy provides that "bodily injury" must have occurred within the policy period for it to be covered, and the plaintiff in the underlying action would have suffered mental anguish only after the policy in question has expired, then there is no coverage, and the insurer has no duty to defend against a suit based on such allegations. *Martin*, 662 So. 2d at 250; *North American Specialty Ins. Co. v. Universal Underwriters Ins. Co.*, 703 So. 2d 995, 998 (Ala. Civ. App. 1997). As it appears that the Harlows would have suffered mental anguish only after the Policy expired, such injury would not be covered. And because the Harlows have not alleged any form of covered "property damage" or that they themselves suffered "bodily injury" occurring within the policy period, the Court concludes that Westport has no duty to defend or indemnify Wayne's against the any of the claims brought by the Harlows in their individual capacity.

Wayne's argues that even if the Harlows' own mental anguish would come too late, the claims of other putative class members include claims seeking to recover for mental anguish, and thus "bodily injury," occurring within the coverage period. Specifically, Wayne's alleges that it provided notice within the policy period to at least some other members of the putative class that their termite warranty contracts were not going to be renewed, at which time they might suffer mental anguish.

This Court need not reach the issue of whether Westport has a duty to defend and indemnify Wayne's against claims of members of the putative class sought to be represented by

the Harlows. Those claims must be asserted in the underlying action by someone other than the Harlows, for the Harlows cannot represent a class in which they are not members. This declaratory judgment action does not bind the members of the putative class.

## IV. CONCLUSION

Based on the foregoing analysis, the Court concludes that Westport's motion for summary judgment is due to be granted, while Wayne's cross-motion is due to be denied. First, it is undisputed that Westport is entitled to summary judgment on Wayne's counterclaim alleging "anticipatory breach of contract." *See* note 1, *supra*. The Court also concludes that Westport has no duty to defend Wayne's in the underlying action because the Harlows have not alleged that they individually suffered any form of covered "property damage" or that they individually suffered "bodily injury" within the coverage period of the Policy. The issue of whether Westport has a duty to defend and indemnify Wayne's against claims of the putative class is not before the Court in this declaratory judgment action.

A separate order embodying these conclusions will be entered.

Done this 6th day of December, 2002.

_____
Chief United States District Judge
U. W. Clemon